# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES E. WINNER, JR.,               )
                                    )
                Plaintiff,          )    2:07-cv-903
         v.                         )
                                    )
ETKIN & COMPANY, INC.               )
                                    )
                                    )
                Defendant.          )


## MEMORANDUM OPINION AND ORDER

Before the Court for consideration are DEFENDANT ETKIN & COMPANY'S MOTION PURSUANT TO F.R.C.P. 37 FOR FAILURE TO OBEY A DISCOVERY ORDER AND TO COMPEL FURTHER DISCOVERY (*Document No. 38*) and DEFENDANT ETKIN & COMPANY'S MOTION PURSUANT TO F.R.C.P. 37 TO COMPEL FURTHER DISCOVERY (*Document No. 39*). Plaintiff James E. Winner, Jr. ("Winner") has filed responses to both motions (*Document Nos. 40, 42*) and Defendant Etkin & Company, Inc. ("ECI") has filed reply briefs *(Document Nos. 41, 43)*. Numerous exhibits have been submitted. The motions are ripe for decision.

This case arose out of ECI's efforts to secure a buyer for Winner Steel, Inc. ("Winner Steel"), which is allegedly controlled by Winner. On May 17, 2005, ECI and Winner Steel entered into an agreement (the "May 17, 2005 Agreement") that provided for a Success Fee to ECI if it found a buyer for Winner Steel. James Winner signed that agreement in his capacity as Chairman of the Company. The agreement contains an arbitration clause. ECI filed a claim in arbitration against the Company and James Winner in his individual capacity. Winner filed the instant suit, seeking a declaration that he is not bound to participate in the arbitration in his individual capacity. Thus, this federal litigation has a very limited scope.

"Arbitration is fundamentally a creature of contract. . . . [N]o party can be forced to arbitrate unless that party has entered into an agreement to do so." *Kaplan v. First Options of*

*Chicago, Inc.*, 19 F.3d 1503, 1512 (3d Cir. 1994). The only contract which contains an arbitration clause is the May 17, 2005 Agreement executed between ECI and Winner Steel. ECI contends, nevertheless, that Winner can be compelled to participate in the arbitration in his individual capacity under the alter ego theory.

Motion for Failure to Comply with Prior Order

ECI contends that despite the Court's Order dated February 28, 2008, which directed Winner to produce all responsive and unprivileged documents, "certain responsive documents do not appear to have been produced."[1] In light of the quantity of documents contained in the privilege log prepared by Winner, ECI's expectations regarding the existence of additional responsive documents appear to be reasonable. Specifically, ECI contends that the following categories of documents should exist, but have not been produced: (a) communications among Winner, the Winner Steel Board of Directors and/or the Shareholders of Winner Steel relating to the sale of Winner Steel's assets, including documents relating to the January 2007 letter of intent and April 2007 asset purchase agreement; (b) Winner Steel financial records; (c) Winner Steel Liquidating Trust documents; (d) documents relating to funds set aside for claims; and (e) agreements concerning Winner Steel stock. ECI states that it brought these concerns to the attention of Winner's counsel and requested a supplemental production, but counsel responded that the original document production was comprehensive and complete.

Winner, in response, states that counsel undertook extraordinary efforts to comply with this Court's order, which resulted in the production of over 60,000 pages of documents. Winner avers that all responsive documents have been produced. Counsel further avers that the production was not "scrambled." Specifically, Winner explains that it should not be surprising that he communicated with the co-owners of Winner Steel (who were family members) in

---

[1] ECI raised a similar concern in its first motion to compel, and the Court noted that it was unable to assess the validity of ECI's assertion at that time, but urged counsel for both parties to fulfill all of their professional obligations.

2

person, rather than in written documents. Winner asserts that audited financial statements for Winner Steel from 2003-2006 were produced, as were balance sheets and year-to-date statements of cash flows through February 28, 2007, an estimate of working capital prepared as of April 30, 2007, accounts payable and accounts receivable as of April 24, 2007, and a Closing Statement and Flow of Funds Memorandum prepared for the closing. Winner avers that it also produced all financial documents relating to the Winner Steel Liquidation and the Winner Steel Inc. Liquidating Trust. Winner states that documents relating to the escrow of funds at closing have been produced and that there are no documents showing funds "set aside" for satisfaction of potential claims by creditors. Finally, Plaintiff contends that because the irrevocable trusts that own Winner Steel stock for the benefit of Winner's children were created in 1992 (prior to the creation of Winner Steel) and do not refer to Winner or name him as a party, they are outside the scope of document request No. 9.[2]

In its reply brief, ECI points out that Winner's obligation was to produce documents in the form in which they were kept in the ordinary course of business, or labelled by document request, rather than producing documents in the manner in which they were "located and retrieved." The Court agrees with ECI. ECI continues to believe that additional responsive documents exist and should be produced.

At bottom, the discovery process relies upon the good faith and professional obligations of counsel to reasonably and diligently search for and produce responsive documents. *See* Fed.

---

[2]Request No. 9 seeks production of: "**All documents relating to or reflecting shareholder agreements, voting agreements and/or trust arrangements or agreements concerning Winner Steel stock in which Jim Winner is referred to or is named as a party**." ECI asserts that this Request is phrased in the disjunctive such that all trust agreements are responsive. To be fair, there is at least some ambiguity as to whether the phrase "**in which Jim Winner is referred to** ..." modifies only the term "**agreements**" or also modifies the terms "**shareholder agreements**," "**voting agreements**," "**trust arrangements**," and "**All documents**." Not surprisingly, Winner adopted a narrow interpretation. Documents relating to or reflecting the trust arrangements concerning Winner Steel stock are discoverable and should be produced. This, again, is an issue that should have been resolved by counsel without the necessity of intervention by the Court.

3

R. Civ. P. 26(g) (effect of signature) and Advisory Commentary to 1983 Amendment ("spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues"). The Commentary to the 1983 Amendment to Subdivision (g) explains: "If primary responsibility for conducting discovery is to continue to rest with the litigants, they must be obliged to act responsibly and avoid abuse." Winner's counsel avers that an "extraordinary effort" was undertaken and that all responsive documents have been produced. The Court recognizes and appreciates ECI's suspicions that additional documents should exist. However, the Court has no independent way to determine whether or not Plaintiff's response was comprehensive and Plaintiff cannot be required to "prove a negative" by demonstrating that non-existent documents do not exist. The Court accepts Plaintiff's counsel's representation that a comprehensive search was conducted and that all responsive documents have been produced. To the extent that Defendant is able to develop evidence that this representation is incorrect, the Court will entertain an appropriate motion at that time.

In accordance with the foregoing, DEFENDANT ETKIN & COMPANY'S MOTION PURSUANT TO F.R.C.P. 37 FOR FAILURE TO OBEY A DISCOVERY ORDER AND TO COMPEL FURTHER DISCOVERY (*Document No. 38*) is **DENIED**, with the exception of documents relating to or reflecting trust arrangements as set forth *infra* in footnote 2.

Attorney-Client Privilege Log

Winner has prepared a privilege log which lists 3,949 documents that were withheld on the basis of "attorney client privilege." ECI challenges the withholding of these documents on two grounds: (1) that the log itself is grossly inadequate to meet Winner's burden to establish the attorney-client privilege; and (2) that ECI is "within the privilege" such that assertion of the attorney-client privilege is unwarranted. Defendant has submitted an affidavit from William Etkin, which describes the extensive communications he had with Winner and Winner Steel's counsel regarding legal advice relating to the sale of Winner Steel to Duferco U.S. Investment Corp. ("Duferco"). As relief, ECI seeks an order compelling Winner to produce the affected

documents or, at a minimum, to prepare a more detailed privilege log.

Winner, in response, contends that the privilege log is "more than adequate to support the claim of privilege" and that it would be unreasonable to require him to incur the time and expense to revise it. Winner asks the Court to limit discovery pursuant to Fed. R. Civ. P. 26(b)(2)(C)(iii). Plaintiff points out that only twelve of the documents on the log were sent to or from Winner. Plaintiff also avers that errors on the log will be corrected, and that all documents which Etkin previously received will be produced. Plaintiff attempts to distinguish the authorities cited by ECI for the proposition that he was within the attorney-client privilege. Plaintiff does not, however, challenge the factual averments contained in the Etkin affidavit.

The general principles governing the attorney-client privilege are straight-forward. The attorney-client privilege represents a policy judgment that in some circumstances, encouraging a client to fully disclose information to legal counsel is more important than providing the decision-maker with all relevant facts. "Nevertheless, because the privilege obstructs the search for the truth and because its benefits are, at best, 'indirect and speculative,' it must be 'strictly confined within the narrowest possible limits consistent with the logic of its principle.'" *In re Grand Jury Investigation*, 599 F.2d 1224, 1235 (3d Cir. 1979) (citations omitted).

As a preliminary matter, Winner's citation to Fed. R. Civ. P. 26(b)(2)(C)(iii) is unavailing. The Court's previous order dated February 28, 2008 determined that ECI was entitled to discovery in support of its veil-piercing claim. As Winner recognizes, the Court ordered "that all the voluminous documents requested be produced." Plaintiff's Response at 3. The Court has already determined that the burden and expense of the proposed discovery does not outweigh its likely benefit, considering the needs of the case, and the Court will not revisit that decision. The adversarial and non-cooperative approach displayed by both sides in this dispute is, in large part, responsible for the burden and expense of which Winner complains.

As another initial matter, ECI is correct that the burden to demonstrate the applicability of the attorney-client privilege is on the party asserting the privilege. *Schmidt, Long & Assoc., Inc.*

5

*v. Aetna U.S. Healthcare, Inc.*, 2001 WL 605199 (E.D. Pa. 2001) (applying Pennsylvania law).[3] The privilege does not bar all testimony by counsel concerning communications with a client, but rather, only bars discovery of confidential communications made by the client during the course of representation. *Id.* (citation omitted). In *Schmidt*, the Court explained that "[a]lthough the evidence may establish that an attorney-client relationship existed," the plaintiff had failed to establish that the documents generated were based upon confidential communications received from the client. 2001 WL 605199 at * 4 (citation omitted). The Court further noted that "a communication will not be privileged if the attorney is merely conveying information learned from sources other than the client." *Id.* The Court acknowledges that in large, complex commercial transactions, counsel must often address business considerations as a necessary part of rendering legal advice. However, even the case cited by Plaintiff for that proposition, *Ross v. UKI, Ltd.* 2004 WL 67221 (S.D.N.Y. 2004), also explained that "simple business advice, even if provided by a lawyer, is not privileged." It is Winner's burden to provide sufficient detail to enable ECI and the Court to assess whether the assertion of privilege as to each document withheld was justified.

To properly invoke the attorney-client privilege, the party resisting discovery must demonstrate that: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made is a member of the bar of a court, or his or her subordinate, and is acting as a lawyer in connection with the communication; (3) the communication relates to a fact of which the attorney was informed by the client without the presence of strangers for the purpose of securing primarily either an opinion of law, legal services, or assistance in some legal proceeding, and not for the purpose of committing a crime or tort; and (4) the privilege has been claimed and not waived by the client. *Rhone-Poulenc*

---

[3]This Court's jurisdiction is based on diversity of citizenship. Federal Rule of Evidence 501 states, in relevant part, that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege . . . shall be determined in accordance with State law." The parties have not disputed which state's law is applicable, and the Court is not aware of any dispositive differences under New York law.

*Rorer, Inc. v. Home Indemnity Co.*, 32 F.3d 851, 862 (3d Cir.1994).

The Court agrees with ECI that the privilege log provided by Winner falls far short of meeting his burden. The log does not contain sufficient information to enable ECI or the Court to assess the validity of Winner's claim of privilege. Fed. R. Civ. P. 26(b)(5)(A). In particular, ECI is correct that the privilege log wholly fails to establish that the lawyers involved were acting in a legal rather than business capacity or that the documents contain privileged client communications, as opposed to mere business or factual information. Indeed, other than complaining about the time and expense needed to revise the privilege log, Winner does not seriously contest the validity of ECI's position regarding the inadequacy of the log.[4] In summary, if Winner seeks to withhold documents on the basis of privilege, it must do so in accordance with the Federal Rules of Civil Procedure. Winner has not done so to date.

The parties' competing contentions as to whether Etkin was "within the privilege" and whether the privilege may be asssserted against former corporate officers are somewhat beside the point.[5] Winner apparently does not contest the fact that he had "hundreds of conversations" with Etkin concerning the Transaction, many of which concerned privileged legal advice. With that factual predicate established, the documents relating to those conversations must be produced. Either Etkin was "within the privilege," *see Ross v. UKI Ltd.*, 2004 WL 67221 at * 3 (disclosure to financial advisers assisting with deal); *Carnegie Hill Finance, Inc. v. Krieger*, 2000 WL 10446 (E.D. Pa. 2000) (privilege could not be asserted against former officers as to documents created when they were in a position to obtain legal advice on behalf of the corporation), or alternatively, the privilege was waived when Winner disclosed such information to Etkin. *See, e.g., In re Subpoenas Duces Tecum,* 738 F.2d 1367 (D.C.Cir.1984)*; In re Sealed Case,* 676 F.2d 793

---

[4] The Court has no doubt that Winner's counsel, Reed Smith, has sufficient resources to prepare a proper privilege log in a timely manner.

[5] The Court acknowledges that there is a split of authority as to whether the attorney-client privilege may be invoked against former officers and directors. The issue is not nearly as one-sided as Plaintiff portrays, but the Court need not decide it.

7

(D.C.Cir.1982) (once waived, privilege cannot later be selectively invoked). In either event, the rationale for the attorney-client privilege would not be furthered by preventing Etkin from obtaining the very information that had previously been disclosed to him in his role as head of the negotiating team.[6] The Court of Appeals has instructed that the attorney-client privilege be 'strictly confined within the narrowest possible limits consistent with the logic of its principle.'" *In re Grand Jury Investigation*, 599 F.2d at 1235 (citations omitted). In sum, the Court holds that Winner has not met his burden to validly assert the attorney-client privilege in the privilege log as currently constituted.

In accordance with the foregoing, DEFENDANT ETKIN & COMPANY'S MOTION PURSUANT TO F.R.C.P. 37 TO COMPEL FURTHER DISCOVERY (*Document No. 39*) is **GRANTED IN PART AND DENIED IN PART**. The Court will not order the immediate production of all documents listed on the privilege log. Plaintiff shall either produce the relevant documents or provide a privilege log that fulfills the requirements set forth in Rule 26(b)(5) on or before June 30, 2008. The Court, again, encourages counsel to cooperate regarding methods of streamlining discovery and to exercise professionalism in narrowing any remaining disputes. In particular, counsel should explore whether revisions to the Stipulation and Order Governing the Production and Exchange of Discovery Material (Document No. 36) may facilitate resolution of such disputes.

SO ORDERED this 17th day of June, 2008.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

---

[6] The Court agrees with Winner that the attorney-client privilege and/or work product protection would likely apply to documents relating to the AAA arbitration or this case.

cc:     Jack B. Cobetto, Esquire
Email: jcobetto@reedsmith.com

Daniel B. McLane, Esquire
Email: dmclane@eckertseamans.com

Robin Fineman
Email: rfineman@paulweiss.com